UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| MERCURY DEVELOPMENT, LLC, and EAGLE REALTY & DEVELOPMENT, LLC<br><br>    Plaintiffs/Counterclaim Defendants<br><br>V.<br><br>MOTEL SLEEPERS, INC<br><br>    Defendant/Counterclaim Plaintiff. | Civil No: 11-147-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The only remaining claim in this action is the Defendant's counterclaim for attorney's fees. [R. 37.] Both parties have filed extensive briefs about whether the clause concerning attorneys' fees found in § 11 of their real estate contract is enforceable, and about its relationship to the rest of the contract. Amidst the "sound and fury"[1] of the numerous arguments raised in the parties' briefs, there remains only one pertinent issue for the Court to resolve. To enforce the provision or not to enforce it – that is the question. The answer, however, depends to some extent on the nature of the contingencies found in the parties' original agreement, which the Court seeks to further clarify in this opinion. The Court also endeavors to delineate the procedural posture of this case, which has become somewhat akin to Shakespeare's complicated plots, though certainly not as entertaining.

The Defendant, Motel Sleepers, Inc. ("MSI"), submitted in its amended answer to the Plaintiffs' complaint a counterclaim for attorneys' fees. [R. 19.] MSI later moved for summary

---

[1] *Macbeth*, Act 5, Scene 5, 26-28. Since the parties enjoy referencing *Hamlet*, the Court thought it fitting to join the parties in their predilection for alluding to the Great Bard.

judgment against the Plaintiffs' claims concerning breach of contract and fraud, and moved for summary judgment in MSI's favor on its counterclaim. [R. 30]. The Plaintiffs objected to MSI's motion and requested that the Court deny MSI's summary judgment motion but did not file any cross-motion for summary judgment. The Court has granted summary judgment to the Defendant MSI on the breach of contract claims but denied summary judgment on the counterclaim [R. 37], which left an orphaned claim – unsuitable for trial but on which a motion for summary judgment had not been filed by the Plaintiffs. The Court then utilized Fed. R. Civ. P. 56(f) to help solve that problem by informing the parties of its intent and allowing time for supplemental briefing on that issue. After considering the parties' lengthy arguments (including the references to *Hamlet*), the Court holds that summary judgment will be GRANTED in MSI's favor on its counterclaim concerning attorneys' fees.

I

Defendant MSI is a company that contracts with various railway companies to offer long-term housing and food services to their employees who are on long-term assignments away from their permanent residences. [R. 30 at 3.] Plaintiff Mercury Development attempted to sell a piece of land in Somerset, Kentucky to MSI, brokered by Eagle Realty. [R. 31 at 3.] The property which MSI attempted to purchase was encumbered by a restrictive covenant requiring "NO MOTELS other than HOLIDAY INN EXPRESS shall be located on any lot unless approved by a member of Sitaram, LLC." [R. 20-17 at 6.] On March 18, 2010, both parties signed the contract under the assumption that the private MSI facility would not constitute a motel. [R. 30 at 8; R. 31 at 3.] In § 17 of the contract, entitled "This Contract is Contingent Upon The Following", the Executive Vice President of MSI included three handwritten conditions: "bank financing, signed contract from Norfolk Southern Railway, soil test." [R. 31-1

2

at 3; R. 41-1 at 3.]

MSI then approached Malvern National Bank (MNB) and secured financing up to $3,067,875 at the end of April, 2010. [R. 30-9.] On June 14, MSI and MBN agreed to increase the loan to $4,647,634 to accommodate building a larger facility than previously planned. [R. 30-10.] That same day MNB received an updated title commitment and draft deed, which made MNB aware of the restrictive covenant for the first time. [R. 27 at 8.] Fearing that the facility would have no resale value or opportunity for liquidation, MNB refused to provide financing unless Sitaram waived the covenant, which Sitaram would not do. [R. 26 at 6; R. 27 at 8-9.] Without adequate financing, MSI had to inform Mercury Development that "despite our good faith efforts the contingency will not be met and thus there is no legal obligation to close the transaction." [R. 30-11 at 2.] Mercury Development then sued MSI for breach of contract and fraud.

As mentioned above, the Court granted summary judgment in favor of MSI on all claims brought against it by the Plaintiffs. [R. 37.] The Court denied summary judgment on the Defendant's counterclaim for attorney's fees, but Plaintiffs had not sought summary judgment on the counterclaim. This claim, therefore, around which there was only a legal dispute, was left in limbo. To resolve that problem, the Court used Fed. R. Civ. P. 56(f)(1), Judgment Independent of the Motion, to notify the parties of the Court's intention to contemplate granting judgment in favor of the Plaintiffs. [R. 40]. As required by FRCP 56(f), the Court gave the parties notice of its intention and a reasonable time to respond before that action could take place. [R. 40]. Plaintiffs' response requested the Court to adhere to its inclination and rule in their favor. [R. 38.] MSI's response asked that the Court reconsider its proposed ruling on the matter of

3

attorney's fees [R.39.] and outlined numerous reasons why judgment should be granted in its favor instead.

Before explaining why the law supports MSI's position in this matter, a brief procedural explanation is necessary. Rule 56(f) states:

> After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f). Here, because Plaintiffs had not moved for summary judgment on the counterclaim, subsection one was clearly implicated. Ruling for MSI in this context, however, is more complicated because summary judgment was already denied and none of the subsections provide a foundation for ruling in MSI's favor under these circumstances. The Court, however, construed MSI's objections to its intended ruling as a motion to reconsider pursuant to FRCP 60(b)(1) [R. 40 at 1], and after carefully considering the parties' arguments on the matter, the Court determined that the law supports MSI's position.[2] Unlike the Plaintiffs, MSI moved for summary judgment on its counterclaim [R. 30 at 1], and the Court therefore will grant MSI's motion to reconsider and also award summary judgment to MSI on its counterclaim for attorney's fees.

When granting summary judgment on the claims asserted in the complaint, the Court held that no breach of contract had occurred because a condition to the contract had not been fulfilled.

---

[2] Technically, this probably should have been construed as a Rule 59(e) motion instead. The commentary on the FRCP says that Rule 60(b)(1) is for minor mistakes and clerical errors that are not substantively factual or legal. Motions that seek substantive alterations of a judgment may, in the court's discretion, be treated as a request for Rule 59(e) relief. Rule 59(e) is the mechanism by which a district court may correct errors to amend a judgment. No actual grounds for using this are listed in the rule itself, leaving it to case law to fill in some of the gaps. The Sixth Circuit has listed correcting "a clear error of law" and " to prevent manifest injustice" as two of the grounds for the proper use of Rule 59(e) to amend a judgment. *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551-52 (6th Cir. 2012). Whether the Court and the parties use Rule 60(b)(1) or Rule 59(e), the result in this case would be the same.

[R. 37 at 6-14.] In that analysis, the Court did not clarify whether the condition of obtaining financing was a condition precedent to contract formation or a condition precedent to contract performance. The Court then addressed MSI's counterclaim seeking recovery of attorney's fees, and suggested that the failure of a condition precedent might have voided the entire agreement, including the provision for attorney fees. [R. 37 at 16-17.] That supposition rested on Kentucky law that a contract conditioned on third-party approval is invalid in default of that condition. *Green River Steel Corp. v. Globe Erection Co.*, 294 S.W.2d 507, 509 (Ky. 1956). The Court issued that decision under Rule 56(f) to allow careful briefing and response by the parties. As will be explained further below, after considering the parties' intent as shown by their words and conduct, and in light of Kentucky law, the Court holds that the condition of obtaining bank financing did not offer the bank an opportunity to approve the contract itself, but only an opportunity to approve financing for a party to the contract.[3] As such, the requirement that MSI obtain financing was a condition precedent to contract *performance* rather than to contract *formation*. When MSI could not obtain the financing, the parties were excused from performance, per their contractual agreement. Because their agreement, however, is valid, the § 11 provision for attorney's fees will be enforced. Therefore the Court orders summary judgment be GRANTED in favor of defendant MSI's counterclaim for attorney's fees from Mercury Development.

**II**

In order to determine the appropriate course regarding the clause about attorney's fees, the Court believes it necessary to clarify any confusion that may have developed in this case about the real estate contract as a whole. Such clarification necessarily implicates several basic

---

[3] Notably, the property value could have been covered by less than 3.5% of the final loan request. The substantial portion of the financing, the lodging facility, was not even a subject of this contract.

rules of contract interpretation, the differences between contracts and conditional agreements, and distinctions between conditions precedent to formation and conditions precedent to performance. First of all, it is important to remember that courts should protect the freedom of individuals to voluntarily enter into contractual agreements with others, and thus should not re-write a contract for the parties under the guise of construing it. *Bennett v. Dudley*, 391 S.W. 375, 376-77 (Ky. 1965); *see also Zeitz v. Foley*, 264 S.W. 2d 267, 268 (Ky. 1954) ("contracts voluntarily made between competent persons are not to be set aside lightly," for "the right of private contract is no small part of the liberty of the citizen"). Rather, the primary goal of the court should be "to effectuate the intentions of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. 2002). "'Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible.'" *Id*. at 384-85 (quoting *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986).

When interpreting a contract, courts must determine which parts, if any, are ambiguous because the presence of ambiguity will direct the analysis. *Frear v. P.T.A. Indus., Inc.*, 103 S.W. 3d 99, 105-06 (Ky. 2003). If there is no ambiguity, the court must strictly enforce the contract's terms "by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear*, 103 S.W.3d at 106 (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)); *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965). When the language of the contract is ambiguous, however, the court must try to determine the intention of the parties by evaluating the contract "'as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written.'" *Frear*, 103 S.W.3d at 106 (quoting *Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (Ky. 1954)). Thus, when resolving ambiguous or uncertain contract provisions, the court may use extrinsic evidence

6

concerning the parties' intentions as well as "the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Cantrell*, 94 S.W.3d at 385; *Teague v. Reid*, 340 S.W.2d 235, 242 (Ky. 1960). A contract or a provision in a contract is ambiguous "if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell*, 94 S.W. 3d at 385; *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. Ct. App. 1994).

## A

Contracts often contain various conditions and contingencies which require specific interpretation. In the case at hand, the contract between MSI and Mercury Development specifically stated that the contract was contingent upon three future occurrences, one of which was bank financing. [R. 41-1 at 3.] The resolution of the parties' dispute over enforcement of the attorney's fees provision partly depends on whether the parties had a contract or merely a conditional agreement. Although Kentucky law clearly indicates the ramifications of a conditional agreement, it does not require that this condition be interpreted as a precedent to contract formation. In *Green River Steel Corp. v. Globe Erection Co.*, the sale of a corporation was not binding until approved by Reconstruction Finance Corporation, and it was clear that the "parties thought such approval was essential to its validity." *Green River Steel Corp.,* 294 S.W.2d 507, 509 (Ky. 1956). Even overlooking the clear intent of the parties, this cases is easily distinguished from the agreement between Mercury Development and MSI. The parties in *Green River* agreed to approval of the contract by a government agency --- a specific third party with power to authorize the contract. *Id.* at 510. Such a condition exemplifies both a condition precedent to formation, as well as the typical paradigm which Kentucky courts recognize for conditional agreements. *See also Hopkins v. Performance Tire & Auto Serv. Ctr., Inc.*, 866

7

S.W.2d 438 (Ky. Ct. App. 1993) (requiring approval of the contract by parent company); *Eagle v. City of Corbin*, 122 S.W.2d 798 (Ky. 1938) (requiring approval by two-thirds of voters); *City of Ashland v. Queen*, 71 S.W.2d 650 (Ky. 1934) (requiring approval by town officers); *In re Big Rivers Elec. Corp.*, 233 B.R. 726, 734 (W.D. Ky. 1998) (requiring approval by bankruptcy court). In such cases, because a party to the contract is unable to give full assent without the authorization of a superior third party, the failure of that condition precedent strikes at the heart of mutual assent and voids a conditional agreement.

In contrast, the requirement of MSI's obtaining bank financing did not provide authorization for the contract, nor did it require input from a specific bank --- indeed, the financing could have been obtained from any bank. Moreover, the condition did not prevent MSI from giving full assent to the contract; rather, MSI introduced the bank financing term to limit its own liability. While it is true that when an agreement is "subject to the consent or approval of a third person, it must be looked on as a conditional agreement, dependent on such consent being given," *Green River Steel Corp.*, 294 S.W.2d at 509, the contract at issue in this case was not subject to the bank's approval or consent; rather, the performance of the contract was subject to MSI's obtaining financing. Here, there was nothing requiring the contract to be approved by a third person – the bank had to approve a loan to MSI, but did not need to approve the formation of the contract itself. [R. 39 at 4.] "Approval" of bank financing is not the type of approval discussed by *Green River*, and it should not be analyzed under the same legal framework. For the foregoing reasons, the Court finds that the bank financing term created a condition precedent to performance and not a conditional agreement. The term was not a condition precedent to formation because MSI still had an obligation to proceed in good faith toward obtaining the financing necessary to performing the contract. Thus, the failure to obtain

8

bank financing excused the parties from performance but did not necessarily invalidate the overall agreement itself.

The failure of a condition precedent to contract *formation* invalidates the entire agreement. *Clarion Mfg. Corp. of Am. v. Justice*, 971 S.W.2d 288, 289-90 (Ky. 1998). In contrast, the failure of a condition precedent to *performance* excuses the performance obligation subject to that condition. *Breckinridge Cnty. v. Beard*, 27 S.W.2d 427, 429 (Ky. 1930). The Supreme Court of Kentucky has noted its reluctance to construe language as a condition precedent to formation unless constrained by "plain, unambiguous language or by necessary implication." *Honaker v. Duro Bag Mfg. Co.*, 851 S.W.2d 481, 483 (Ky. 1993) (citations omitted). Because the Court realizes the conditions inherent in the contract at hand could be considered ambiguous – i.e., capable of more than one interpretation,[4] *see Cantrell*, 94 S.W. 3d at 385, --- the Court has utilized traditional rules of contract interpretation to construe the contingency section as a condition precedent to performance rather than to formation.

Under Kentucky law, courts use the doctrine of contemporaneous construction to interpret clauses of contracts that are subject to more than one interpretation. *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 120 (6th Cir. 1981). According to that doctrine, when determining the meaning of an ambiguous contract provision, "courts are required to give great weight to the interpretation which the parties have placed upon an ambiguous contract. The construction of the parties is best evidenced by their conduct with respect to the agreement." *A.L. Pickens Co., Inc.*, 650 F.2d at 120 (quoting *Billips v. Hughes*, 259 S.W.2d 6, 7 (Ky. 1953)). Thus, the Court must examine "the course of performance engaged in by the parties to the contract." *Id.* at 120. Here, Mercury Development and Eagle

---

[4] The contract here does not clearly distinguish between the two types of conditions. Section 17 of the contract is simply titled "This contract is contingent upon the following:. . ." A party seeking to add a condition to performance or a condition to formation presumably would need to list it under this same section.

9

Realty claimed breach of contract [R. 1-1 at 2], while MSI counterclaimed for attorney's fees pursuant to § 11 of the contract. [R. 19 at 5.] Both parties acted as if the contract was valid and only disagreed about the sufficiency of MSI's attempt to fulfill the condition of that contract. Neither party argued that the contract was a conditional agreement. Instead, the conduct of the parties reveals a valid contract with performance conditioned on the buyer obtaining bank financing.

## B

The Court now turns to the question of whether MSI's failure to obtain financing invalidated the contract's provision about attorney fees. The specific clause at issue here is a provision in § 11 of the contract stating the following:

> ENFORCEMENT AND COSTS OF LITIGATION: Should it become necessary to institute litigation to enforce this contract, the prevailing party shall be entitled to recover costs, including reasonable attorney fees, from the non-prevailing party.

[R. 41-1 at 3, §11.]  The parties have exchanged numerous arguments about whether this clause is enforceable despite the lack of a severability clause in the contract.  The Court finds that the presence or absence of a severability clause is not the primary consideration for determining whether to enforce such provisions.  The provision for attorney fees in this case is enforceable for several reasons.  The first is that, as explained above, the failure of a condition precedent to performance does not invalidate the other portions of the contract.  *Lewis by Lewis v. W. Am. Ins. Co.*, 927 S.W.2d 829, 836 (Ky. 1996) (upholding the balance of an insurance contract after invalidating one clause that violated public policy by distinguishing between valid and invalid clauses in a contract); *General Accident, F&L Assur. Corp. v. Louisville H.T. Co.*, 193 S.W. 1031, 1034-35 (Ky. 1917) (holding that when contracts contain both valid and invalid clauses,

the court may uphold the valid parts while eliminating the invalid parts). Thus, the rest of the contract, including the attorney fees provision of §11 can still be enforceable.

  A second and related reason is that contract interpretation generally favors enforcement of the parts of a contract wherever possible. *Bennett v. Dudley*, 391 S.W.2d 375, 376 (Ky. 1965) (applying the rule that when an agreement "is susceptible of two constructions, one of which would render it enforceable and the other unenforceable, the former construction will prevail") (citing *Coles v. Morrison*, 261 S.W. 600, 601 (Ky. 1924)); *see also City of Louisa v. Newland*, 705 S.W. 2d at 919 ("Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible."). The presence of a severability clause is not the only way to save other parts of a contract when one part is invalidated. *See Cox v. Wagner*, 907 S.W.2d 770, 771 (Ky. 1995) ("Where part of a contract is void, the whole contract will not be set aside unless good and bad parts cannot be separated without altering its purpose.") (citing *Farmers' Bank of White Plains v. Bass*, 292 S.W. 489, 490 (Ky. 1927)). When there are multiple provisions in a contract, the fact that some of them are invalid does not automatically invalidate all the others; rather any legal or valid parts to the contract should be enforced. *Farmers' Bank of White Plains,* 292 S.W. at 490 (finding that provisions in a contract were severable and thus enforceable despite the fact that other portions of it were invalid). Here, the fact that the parties' performance concerning buying and selling the land was excused should not invalidate their agreement as to attorney fees in the event of future litigation.

  This presumption of enforceability concerning contract provisions is related to the goal of carrying out the intent of the parties whenever possible. Indeed, a third reason for the Court's determination on this issue is that the primary focus in interpreting contracts should be to accomplish the intent of the parties and uphold the contract's purpose. *See Hawkins &*

*Chamberlain v. Mathews*, 47 S.W.2d 547, 548 (Ky. 1932) ("The essential thing is for the court to look at the contract from the standpoint of the parties at the time they executed it, and the purpose they had in view in doing so."); *Keen v. Ross*, 186 Ky. 216 S.W. 605, 606 (Ky. 1919) ("the fundamental rule in the interpretation of contracts is to ascertain from their terms, if possible, the intention of the parties, and to give them such construction as will carry out that intention"). In the case at hand, the purpose of the clause concerning attorney fees was to allocate attorney fees to the winning party in any subsequent litigation. Most likely this provision was included not only for the sake of fairness but also to discourage frivolous litigation and to protect the party with the more valid legal position. Thus, the Court believes that the parties' intent and purpose for including the clause about attorney fees is a more weighty factor than the absence of a severability clause. *See Knight v. Hamilton*, 233 S.W.2d 969, 971 (Ky. 1950) ("'Primarily the question of whether a contract is entire or severable depends upon the intention of the parties, the objects to be obtained, and the common sense of the situation.'") (quoting *Business Men's Assurance Co. of America v. Eades*, 161 S.W.2d 920, 922 (Ky. 1942)); *Byers v. Fuller*, 58 F. Supp. 570, 572 (E.D. Ky. 1945) ("The rule uniformly applied by the courts of Kentucky is that in construing contracts embracing several obligations, the determination of whether they are dependent or independent, entire or severable, depends upon the intention of the parties as disclosed by the terms of the contract itself considered in the light of the subject matter involved and the object to be attained.") (citations omitted). Indeed, a general rule in interpreting contracts that turn on the question of severability is to hold the contract "severable in order that the intention of the parties might be carried out as far as possible," except "where the plain language of the contract" indicates otherwise. *Byers v. Fuller*, 58 F. Supp. 570, 572 (E.D. Ky. 1945).

12

Here, since the provision at issue did not specify that fees would only be awarded to the seller if the contract were enforced against the buyer, presumably the parties intended the agreement to be enforced against either party who prevailed, thus including the instant scenario that has happened here already – *i.e.*, a court ruling in favor of the buyer and not enforcing the sale of the property. Thus, the subject of attorney fees should be considered as a separate and enforceable agreement apart from the contingency of bank financing. *See Koppers Co. v. Asher Coal Mining Co.*, 11 S.W.2d 114, 116 ("If the agreement embraces a number of distinct subjects which admit of being separately executed or enforced, the general rule is that it shall be taken distributively, and each subject considered as forming a separate agreement.").

Moreover, while there may have been some ambiguity as to the nature of the financing condition, the express language of the contract clearly states who should pay attorney's fees – the prevailing party in any litigation to enforce the contract. Here, Mercury Development has instituted litigation to enforce the contract, and the Court has granted summary judgment to MSI – therefore, MSI is the prevailing party and is entitled to recover the costs of the litigation. This outcome is supported by the express language of the fees provision, as well as by the presumed intent of the parties and the purpose of the provision itself. Such reasoning is also consistent with the general caution which courts show in refusing to enforce agreements between parties. *See Coles*, 261 S.W. at 601 (explaining "it is unlikely that parties would consume time and expense in entering into a contract which could be terminated by either at his pleasure, as this would be a vain thing, and when an agreement is susceptible of two constructions, one of which would render it enforceable and the other unenforceable, the former construction will prevail."); *see also Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954) (stating that the usual and most

important function of courts is to enforce and maintain contracts rather than to enable parties to escape their obligations on the pretext of public policy or illegality").

Finally, an important consideration in contract interpretation is that of ensuring mutuality and bilateral obligations on both parties. *Knight v. Hamilton*, 233 S.W.2d 969, 972 (Ky. 1950) ("An important rule of interpretation is that which favors a construction of a contract as bilateral, affording protection to both parties, rather than unilateral.") (citing Rest. of Contracts, section 31); *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986) ("The legal interpretation of a contract should be made in such a way as to make the promises mutually binding on all parties unless such a construction is wholly negated by the language used."). To interpret § 11 in the way Mercury Development has argued would mean only the seller would ever be awarded attorney's fees because the provision would only be effectuated if litigation resulted in enforcing the contract against the buyer. According to the Plaintiff's logic, if the seller prevailed in the litigation, the seller could collect attorney's fees, but if, as is the case here, the buyer prevailed by being excused from performance, the buyer could not collect attorney fees. Such a construction would be unilateral and unjust, and cannot have been the parties' true intention.

### III

Thus, in conclusion, the Court finds that there was a contract between the parties which contained several conditions precedent to performance – bank financing, a signed contract from Norfolk Southern Railway, and a soil test. [R. 41-1 at 3.] One of these conditions, the bank financing, was not met, thus excusing the buyer from performance. The rest of the agreement, such as the clause concerning attorney's fees, remains enforceable. While a severability clause

may have been helpful in this case, it is not necessary.[5] While the condition of obtaining financing excused the buyer from performance, it would result in an "inequitable consequence" to also construe the financing as a condition precedent to enforcing the attorney's fees provision and would counter the purpose of that clause. *See A. L. Pickens Co., Inc.*, 650 F.2d at 121 (stating that Kentucky follows the general rule of caution in interpreting stipulations as conditions precedent when doing so would "work a forfeiture or result in inequitable consequences") (citations omitted). After careful consideration, the Court finds that if it fails to enforce the provision concerning attorney's fees, such reasoning would render similar clauses unenforceable in other standard real estate contracts where conditions precedent to performance were not met. Thus, based on laws of contract interpretation, as well as policy reasons reflected in prior precedent, the Court finds that the clause concerning attorney's fees is still enforceable in light of its express language and the intent of the parties, as evidenced by their conduct and by common sense. Consequently, summary judgment on MSI's counterclaim for attorney's fees will be GRANTED.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1) MSI's Motion to Reconsider [R. 39] is **GRANTED**, and as a result, MSI's Motion for Summary Judgment [R. 30] on its Counterclaim for Attorney's Fees is also **GRANTED**;

(2) The Court will enter an appropriate Judgment contemporaneously herewith.

This 25th day of September, 2013.

---

[5] As an aside, the Court notes that while the parties argue extensively about the logic of the unpublished, and therefore merely persuasive case, *Fentress v. Henderson*, the court in that case did not base its analysis solely on the presence of a severability clause. *See Fentress*, 2005 WL 1540253, at *1-2 (Ky. App.) (July 1, 2005).



Signed By:

*Gregory F. Van Tatenhove*

United States District Judge